Commonwealth *v.* Ehrhart, Appellant.

Argued April 15, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

W. C. Pettit, for appellant.

E. V. Buckley, with him Service, McNeal & Cusick, for appellee.

OPINION BY STADTFELD, J., July 18, 1935:

This is a non-support case under the Act of 1867. On July 30, 1934, the prosecutrix made an information before a Justice of the Peace alleging that her husband, the defendant, by his conduct toward her had obliged her to leave their common habitation on April 8, 1934, taking with her their adopted daughter, aged eight years, and alleging that the defendant had neglected to maintain her and their daughter since May 8, 1934. The defendant was arrested and bound over to the court of Quarter Sessions. Testimony was taken before the court and on February 26, 1935, the court made the order from which this appeal was taken. This order required the defendant to pay the costs in the case and to pay to his wife forty dollars per week for the support of herself and daughter from the date of November 19, 1934.

The prosecutrix and the defendant were married in 1922 and lived together as husband and wife until April 8, 1934, when the prosecutrix left their home, taking with her their adopted daughter. The right of the wife to an allowance for herself and their adopted daughter was not contested. The only question to be decided by the court, therefore, was the amount which the defendant was able to pay.

At the hearing prosecutrix testified that she had regularly received from the defendant the sum of Three

Hundred ($300) Dollars per month up to the "Bank Holiday" in March, 1933, and that from that time he paid her regularly the sum of Two Hundred ($200) per month; that at the time she left their home in Jamestown, Pennsylvania, the defendant offered to pay for the support of herself and their adopted daughter the sum of Two Hundred ($200) Dollars per month, and that on May 8, 1934, pursuant to that offer, he paid the sum of Two Hundred ($200) Dollars but had never paid any money since that date. She further testified that she is in ill health as a result of a venereal disease contracted from her husband; that as a result she had to undergo one operation and, according to the doctor's testimony, will have to undergo another. Her condition prevents her from working or taking any position.

The defendant testified that he is treasurer of the Jamestown Paint and Varnish Company, a corporation, and also in charge of sales. He is the owner of 825 shares of stock of the par value of One Hundred ($100) Dollars per share. His father, V. H. Ehrhart, owns 1,125 shares which comprise all of the stock of the corporation except one share which is owned by the defendant's mother. It has been customary, since the formation of the corporation, for the defendant to withdraw whatever was needed for himself and his family, and when it exceeded the amount of the salary the balance was charged up to an overdraft. The overdrafts would continue to pile up, the total would increase on the books of the company, but the overdrafts continued.

This company has never paid any dividends, and defendant's stock therein is held by the company as collateral security for an indebtedness of the defendant to the company in the sum of $39,642.11. This stock according to defendant's testimony is worth at present $28.50 per share. He also owns 200 shares Utah-Gilsonite stock, worth $15 per share, from which he has been receiving dividends averaging $600 a year. He

owes his father $10,000 on a note given in 1925 on account of the purchase price of half of this stock, the other half having been a gift. On this note there is accrued interest due in the amount of about $5,400. He also owns 50 shares First National Company of Miami stock worth $10 a share, but which pays no dividends.

In addition to the indebtedness to the company in the sum of $39,642.11, he claimed to owe his father, V. H. Ehrhart, two notes amounting to $25,000 and accrued interest thereon since maturity, $6,000, which is a balance of the purchase price of the interest acquired by him from his father in the business of the Jamestown Paint and Varnish Company prior to its incorporation. He also claimed to have paid in 1934 a premium of $500 on a $27,500 insurance policy payable to his wife.

Defendant testified that in 1934 he was drawing a salary of $300 a month; in 1933, $200 per month, and in 1932, $400 per month. There is no resolution on the books of the company as to the amount of the salary to be paid. The president of the company, father of the defendant, gets the Profit & Loss Account at the first of the year, and then sets the salaries for the ensuing year. Although the salary is fixed at a certain amount, defendant, according to his own testimony, was permitted to overdraw his account and "chalk that up" against his indebtedness. His indebtedness by reason of these overdrafts has been growing and increasing constantly. The defendant testified that he had made overdrafts during the last five years. On cross-examination, on being asked if any action had ever been taken to recover on these overdrafts, his answer was as follows: "A. There was, the first of this year. Q. By whom? A. By the President. I complained that I couldn't get along on $2,400 a year and continue in the selling game, and he said 'You can raise it to $3,600 a year, but there will be no overdrafts' ". Yet he testified

that all of this time he had been giving his wife $300 per month while they were living in the same house.

We have carefully read the entire testimony, and cannot say the defendant's testimony was very helpful in aiding the court in coming to a fair conclusion. Notwithstanding that the company was not paying dividends, and in some instances had incurred heavy losses, yet it permitted continual overdrafts on the part of the defendant. Nothwithstanding the alleged large indebtedness to his father, the latter apparently has been very indulgent in not exacting the payment of the interest thereon from the time of the maturity of the several notes held by him. The language of Judge TREXLER in the case of Commonwealth v. Knobloch, 89 Pa. Superior Ct. 216, 218, is most pertinent: "It must be left to the discretion of the lower court very largely as to what the amount of support should be. We can easily imagine that a man of large means could so adjust his finances, incur liability for insurance premiums and other subjects and so regulate his investments that a very small net income might result. In considering the 'sufficient ability' of the husband referred to in the Act of April 13, 1867, P. L. 78, Sec. 1, not only the actual amount earned should be counted, but all the attendant circumstances must be considered."

The lower court, as evidenced by the opinion of McLAUGHRY, P. J., evidently gave careful consideration to this case in arriving at the conclusion that $40 per week was a reasonable amount for the defendant to pay considering his financial ability. Unless there is a clear abuse of discretion, the appellate court will not substitute its judgment for that of the trial judge: Com. v. Knobloch, supra; Com. v. Betts, 76 Pa. Superior Ct. 96.

The order of the lower court entered February 26, 1935, directed the payment of forty dollars per week from "November 19, 1934, when the testimony was completed." In this we think the court erred. The order

should not be made retroactive and should be made effective only from the date thereof: Commonwealth v. MacMaster, 88 Pa. Superior Ct. 37. With this modification the order of the lower court is affirmed. Costs to be paid by appellant.